**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA**

**ARTHUR SEAN WARNER,**

    **Petitioner,**

                                                 **Civil Action No. 1:15cv164**
**v.**                                             **Criminal Action No. 1:14cr81**
                                               **(Judge Keeley)**

**UNITED STATES OF AMERICA,**

    **Respondent.**

**REPORT AND RECOMMENDATION DENYING PETITONER'S MOTION TO
VACATE AND MOTION TO AMEND THE SAME**

**I. Introduction**

On September 18, 2015, the *pro se* petitioner, an inmate incarcerated at FCI Gilmer in Glenville, West Virginia, filed a Motion Under 28 U.S.C. §2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody. ECF No. 43.[1] On September 22, 2015, after a preliminary review of the file, the undersigned determined that summary dismissal of the petition was not warranted, and directed the Respondent to file an answer. ECF No. 45.  The respondent moved for an extension of time on October 15, 2015; by Order entered October 19, 2015, the motion was granted.  ECF No. 49. The Government filed its Response on December 3, 2015. ECF No. 54.  Petitioner filed a reply, styled as Petitioner's Response to United States [sic] Response to Motion to Vacate, set Aside, or Correct Sentence Pursuant to 28 U.S.C. § 2255, on December 21, 2015.  ECF No. 55. Along with his reply, Petitioner filed a letter motion requesting that the respondent provide him with copies of the transcripts and seeking an opportunity to amend his reply to the government's response once he received the transcripts. ECF No 56.  By Order entered January 4, 2016, Petitioner's motion was granted and a time was

---

[1] The citations herein are to Petitioner's criminal case.

1

set for him to file an amended reply, once he received the transcripts. ECF No. 57. A copy of the Order was sent to Petitioner via certified mail, return receipt requested. Despite having received a copy of it on January 6, 2016 [ECF No. 59], Petitioner did not file an amended reply. However, on April 29, 2016, Petitioner did file a Motion to Amend, in light of Molina-Martinez v. United States,[2] pursuant to Rule 15. ECF No. 60.

The undersigned now issues this Report and Recommendation on Petitioner's motion without holding an evidentiary hearing. For the reasons stated below, the undersigned recommends that the District Judge **deny** and **dismiss** Warner's motion.

## II. Facts

### A. Conviction and Sentence

On December 1, 2014, Petitioner signed a plea agreement by which he agreed to plead guilty to Count Two of a three-count indictment with a forfeiture allegation, possession with intent to distribute cocaine base, in violation of 21 U.S.C. Sections 841(a)(1) and 841(b)(1)(C). In the agreement, petitioner waived his right to appeal and to collaterally attack his sentence excepting certain types of claims. Specifically, the petitioner's plea agreement contained the following language regarding his waiver:

> 12. Defendant is aware that 18 U.S.C. § 3742 affords a defendant the right to appeal the sentence imposed. Acknowledging this, and in exchange for the concessions made by the United States in this plea agreement, the defendant waives the right:
>
> a. to appeal any order, the conviction and any sentence that has a base offense level of 32 or lower or the manner in which that sentence was determined on any ground whatsoever, including those grounds set forth in 18 U.S.C. § 3742.
>
> b. to challenge the conviction or the sentence or the manner in which it was determined in any post-conviction proceeding, including any proceeding under Title 28, United States Code, Section 2255. Nothing in this paragraph, however, will act as a bar to the defendant perfecting any legal remedies he may otherwise

---

[2] Molina-Martinez v. United States, 136 S.Ct. 1338 (2016).

> have on appeal or collateral attack respecting claims of ineffective assistance of counsel or prosecutorial misconduct. The defendant agrees that there is currently no known evidence of ineffective assistance of counsel or prosecutorial misconduct.

ECF No. 23 at 4.

On December 4, 2014, Petitioner appeared in open court for his plea hearing. ECF No. 51. Petitioner testified that he was 43 years old and had graduated from high school and attended a year and a half of college. Id. at 4 – 5. He testified that his most recent employment had been a "little business" that he had started, but that prior to that he worked for a trucking company. Id. at 4. He denied any physical or mental disability that might affect his ability to fully participate in the proceedings. Id. at 6. He denied taking any prescription medications and any use of alcohol or drugs within the past twenty-four hours. Id. at 5 - 6. The Assistant United States Attorney ("AUSA") read aloud or summarized each paragraph for the Court. Id. at 8 – 12. The Court then went over the provisions in the plea agreement and elicited Petitioner's understanding on each. Id. at 13 – 18. Petitioner testified that he understood and agreed with all the terms and conditions of the plea agreement, and had had an opportunity to read, fully discuss with counsel, and understand it before signing it. Id. at 12 - 18. The Court specifically asked petitioner if he understood that under the terms of the waiver of his appellate and post-conviction relief rights, he waived his appellate rights if the sentence he ultimately received was based on a base offense level of 32 or lower, and he only retained his rights to appeal or collaterally attack his conviction and/or sentence if he was raising claims of ineffective assistance of counsel or prosecutorial misconduct, and petitioner said that he did. Id. at 17 – 18 and 28. The Court then reviewed all the rights petitioner was giving up by pleading guilty. Id. at 24 – 27. During the plea hearing, the Government presented the testimony of Officer Rob Miranov of the Mon Valley Drug Task

Force in Morgantown, West Virginia, to establish a factual basis for the plea. Id. at 29 – 32. The petitioner did not contest the factual basis of the plea. Id. at 32.

After the Government presented the factual basis of the plea, the petitioner advised the Court that he was guilty of Count Two of the indictment. Id. Petitioner further stated under oath that no one had attempted to force him to plead guilty, and that he was pleading guilty of his own free will. Id. In addition, he testified that the plea was not the result of any promises other than those contained in the plea agreement. Id. at 12 and 32. The petitioner testified that his attorney had adequately represented him, and that his attorney had left nothing undone. Id. at 33. Finally, Petitioner said he was in fact guilty of the crime to which he was pleading guilty. Id. at 32.

At the conclusion of the hearing, the Court determined that the plea was made freely and voluntarily, that there was a factual basis for the plea, and that the petitioner understood the nature of the charge and the consequences of pleading guilty. Id. at 33 – 34. The petitioner did not object to the Court's finding.

On March 19, 2015, Petitioner appeared before the Court for sentencing. ECF No. 52. After considering several factors, including the circumstances of the crime, Petitioner's extensive criminal history, the likelihood of recidivism, and the sentencing objectives of punishment, the Court sentenced the petitioner to a term of 151 months imprisonment, the bottom of the recommended Guideline range, with credit for time served since October 20, 2014, to be followed by three years of supervised release. Id. at 11 - 14. The Court recommended that while incarcerated, Petitioner participate in the Bureau of Prison's ("BOP") substance abuse treatment program and any other available educational or vocational opportunities. Id. at 14. The Court noted that pursuant to his plea agreement, Petitioner did not retain his right to appeal any sentence predicated on a base offense level of 32 or lower, and his base offense level was found

to be 32. Id. at 17. Further, he had also waived his right to file a § 2255 collateral attack challenging the constitutionality of his conviction or sentence, only retained his right to mount a collateral attack insofar as it pertained to claims of ineffective assistance of counsel and prosecutorial misconduct, which he had already admitted he had no evidence of such at the time. Id. at 17 – 18.

## B. Direct Appeal

Petitioner did not file a direct appeal.

## C. Federal Habeas Corpus

**Petitioner's Contentions**

In his federal habeas petition, Petitioner raises three grounds, reordered here for clarity, alleging that counsel was ineffective for

1) failing to move to suppress items found in a safe, the search of which was not covered under the otherwise valid search warrant; and

2) for conspiring with the Government in failing to investigate and object to a prior conviction that served as a predicate offense for Petitioner's Career Offender sentencing enhancement.

3) Petitioner contends he was incorrectly sentenced as a career offender.

As relief, Petitioner requests that his judgment, sentence and plea be vacated and that he receive the two level reduction under Amendment 782 to the United States Sentencing Guidelines ("USSG") and 28 U.S.C. § 994(o).

**Government's Response**

The Government contends that Petitioner's motion to vacate should be dismissed without an evidentiary hearing because

1) Petitioner waived the right to file a § 2255 motion incident to his plea, excepting certain claims of ineffective assistance of counsel;

5

   2) Petitioner's plea was knowing and voluntary; and

   3) Petitioner has procedurally defaulted all three of the grounds raised in his motion because they were not raised on direct appeal.

   4) Counsel was not ineffective for failing to move to suppress items seized without a warrant, because the search warrant specifically listed safes and lock boxes as items to be seized;[3]

   5) counsel was not ineffective for failing to object to the career offender enhancement, despite Petitioner's claim that because he was serving a probationary sentence for one of his predicate convictions at the time he was sentenced on the instant charges, because even without that conviction, Petitioner already had at least two other felony convictions for serious drug offenses.

   6) Petitioner's contention that his sentence would have been more lenient without the inclusion of the items found in the safe is incorrect; had it not been for his prior criminal history and the application of the career offender guidelines bringing his base offense level to 32, his sentence would otherwise have been based on a base offense level of 22, based on his stipulated relevant drug conduct.

   7) Petitioner is not entitled to the two-level reduction under Amendment 782 because he was sentenced under the 2014 sentencing guidelines, which already included the two-level reduction under Amendment 782.

**Petitioner's Reply**

   In his reply, Petitioner concedes and withdraws his first ground, regarding counsel's ineffectiveness for not moving to suppress the items found in the safe. ECF No. 55 at 3. He then reiterates his arguments on his remaining claims and attempts to refute the Government's arguments on the same. He argues that he is entitled to an evidentiary hearing and asks that his motion be granted. Id. at 14.

**Petitioner's Motion to Amend**

   Petitioner contends that pursuant to Rule 15, he is entitled to amend his § 2255 motion to Rule 15 and argues that under Rule 15(e), his amendment relates back to the date of his original pleadings. ECF No. 60 at 2. He argues that under Molina-Martinez v. United States, because of

---

[3] The Respondent attached a copy of the search warrant at issue, showing that the search warrant did include "safes, lock boxes, [and] safety deposit box keys[.]" ECF No. 54-1 at 2.

a mistake in calculating the applicable advisory guideline range, he is entitled to resentencing. Id. at 3 – 4.

## III. Analysis

### A. Petitioner's Burden of Proof

A petitioner collaterally attacking his sentence or conviction bears the burden of proving his sentence or conviction was imposed in violation of the Constitution or laws of the United States, that the court was without jurisdiction to impose such a sentence, that the sentence exceeded the maximum authorized by law, or that the sentence otherwise is subject to collateral attack. 28 U.S.C. §2255. A motion collaterally attacking a petitioner's sentence brought pursuant to §2255 requires the petitioner to establish his grounds by a preponderance of the evidence." Sutton v. United States of America, 2006 WL 36859 *2 (E.D. Va. Jan. 4, 2006).

### B. Applicable Law Regarding Petitioner's Waiver and Ineffective Assistance of Counsel Claims

#### 1) Law Governing Waivers of Direct Appeal and Collateral Attack Rights

" . . . [T]he guilty plea and the often concomitant plea bargain are important components of this country's criminal justice system. Properly administered, they can benefit all concerned." Blackledge v. Allison, 431 U.S. 63, 71 (1977). However, the advantages of plea bargains are only secure when "dispositions by guilty plea are accorded a great measure of finality." Id. The Fourth Circuit has recognized that the Government often secures waivers of both appellate and collateral attack rights "from criminal defendants as part of their plea agreements." United States v. Lemaster, 403 F.3d 216, 220 (4th Cir. 2005).

Courts have routinely held that "defendants can waive fundamental constitutional rights such as the right to counsel, or the right to a jury trial." United States v. Marin, 961 F.2d 493, 496 (4th Cir. 1992); citing United States v. Wiggins, 905 F.2d 51,53 (4th Cir. 1990)(quoting

7

United States v. Clark, 865 F.2d 1433, 1437 (4th Circ. 1989). Specifically, the Fourth Circuit has held that "a waiver-of-appeal-rights provision in a valid plea agreement is enforceable against the defendant so long as it is 'the result of a knowing and intelligent decision to forgo the right to appeal.'" United States v. Attar, 38 F.3d 727, 731 (4th Cir. 1994) (citations omitted). However, a defendant still retains the right to appellate review on limited grounds, such as when a sentence above the maximum penalty provided by statute is imposed or when a sentence is imposed based on a constitutionally impermissible factor. Id. at 732. Furthermore, the Attar court recognized that a defendant cannot "fairly be said to have waived his right to appeal his sentence" on the ground that he was wholly deprived of counsel during sentencing procedures. Id.

Eleven years later, the Fourth Circuit determined there was no reason to distinguish between waivers of appellate rights and waivers of collateral attack rights. Lemaster, 403 F.3d at 220 n.2. The Fourth Circuit noted that all courts of appeals to have considered the issue have "held that the right to attack a sentence collaterally may be waived so long as the waiver is knowing and voluntary." Id. at 220. The Lemaster court did not address whether the same exceptions that were noted by the Attar court apply to a waiver of collateral attack rights, but it did note that it saw "no reason to distinguish" between the two. Id. at 220 n.2; see also United States v. Cannady, 283 F.3d 641, 645 n.3 (4th Cir. 2000) (collecting cases where the court has determined that waivers of § 2255 rights are generally valid).

The Fourth Circuit has not yet issued a binding decision defining the scope of collateral attack waivers and so has not yet imposed on this Court a standard governing "the extent to which an ineffective assistance of counsel claim can be precluded by a § 2255 waiver." Braxton v. United States, 358 F. Supp. 2d 497, 502 (W.D. Va. 2005).[4] However, several courts have held

---

[4] The Fourth Circuit issued an unpublished *per curiam* opinion affirming the Western District of Virginia's ruling in Braxton. See United States v. Braxton, 214 F. App'x 271 (4th Cir. 2007) (per curiam).

that collateral attack waivers should be subjected to the same conditions and exceptions applied to waivers of direct appellate rights. Cannady, 283 F.3d at 645 n.3 (collecting cases). Furthermore, most courts of appeals have determined that waivers of collateral attack rights encompass claims "that do not call into question the validity of the plea or the § 2255 waiver itself, or do not relate directly to the plea agreement or the waiver are waivable." Braxton, 358 F. Supp. 2d at 503.

**2) Law Governing Whether a Waiver is Knowing and Intelligent**

The Fourth Circuit has held that the determination of whether a waiver of appellate and collateral attack rights is "knowing and intelligent" "depends 'upon the particular facts and circumstances surrounding [its making], including the background, experience, and conduct of the accused.'" Attar, 38 F.3d at 731 (quoting United States v. Davis, 954 F.2d 182, 186 (4th Cir. 1992)). This determination is often made upon reviewing the "adequacy of the plea colloquy" and determining, in particular, "whether the district court questioned the defendant about the appeal waiver." United States v. Blick, 408 F.3d 162, 169 (4th Cir. 2005). However, an ultimate decision is "evaluated by reference to the totality of the circumstances." United States v. General, 278 F.3d 389, 400 (4th Cir. 2002).

**3) Standard Governing Claims of Ineffective Assistance of Counsel**

The Supreme Court has set forth a two-prong test for determining whether a convicted defendant's claim of ineffective assistance of counsel warrants the reversal of his conviction. Strickland v. Washington, 466 U.S. 668, 687 (1984). First, "the defendant must show that counsel's performance was deficient." Id. Second, "the defendant must show that the deficient performance prejudiced the defense." Id. These two prongs are commonly referred to as the

9

"performance" and "prejudice" prongs. Fields v. Att'y Gen. of Md., 956 F.2d 1290, 1297 (4th Cir. 1992).

To satisfy the "performance" prong, the defendant must demonstrate that "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed . . . by the Sixth Amendment." Strickland, 466 U.S. at 687. However, a reviewing court does not "grade" trial counsel's performance, and there is a strong presumption that "counsel's conduct falls within the wide range of reasonable professional assistance." Carter v. Lee, 283 F.3d 240, 249 (4th Cir. 2002). Essentially, the reviewing court must not "second-guess" counsel's performance and must "evaluate counsel's performance 'from counsel's perspective at the time.'" Hunt v. Lee, 291 F.3d 284, 289 (4th Cir. 2002)(quoting Strickland, 466 U.S. at 689). Furthermore, the standard of reasonableness is objective, not subjective. See Strickland, 466 U.S. at 688.

To satisfy the "prejudice" prong, the defendant must demonstrate that "counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." Id. at 687. Therefore, if counsel's errors have no effect on the judgment, the conviction should not be reversed. See id. at 691. A defendant who alleges ineffective assistance of counsel following a guilty plea has an even higher burden: " . . . the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Hill v. Lockhart, 474 U.S. 52, 59 (1985); Hooper v. Garraghty, 845 F.2d 471, 475 (4th Cir. 1988). The Fourth Circuit has recognized that "[i]f the defendant cannot demonstrate the requisite prejudice, a reviewing court need not consider the performance prong." Fields v. Maryland, 956 F.2d 1290, 1297.

**C.  Petitioner's Ineffective Assistance of Counsel Claims**

    **1) Petitioner's Claims of Ineffective Assistance Prior to the Plea Colloquy**

As noted above, Petitioner asserts two grounds of ineffective assistance of counsel. ECF No. 43 at 5 and 8. One of those claims, Ground One, whether counsel was ineffective for failing to move to suppress items found in the safe, calls into question counsel's conduct before Petitioner entered his guilty plea. However, in his reply, Petitioner concedes that the search warrant for his house did in fact include the contents of a safe or lockbox, thus he withdraws this claim. ECF No.55 at 3.

Even if Petitioner had not withdrawn this claim, it would have fallen within the scope of Petitioner's collateral attack waiver because it asserted ineffective assistance of counsel for conduct occurring before the entry of Petitioner's guilty plea. See Lemaster, 403 F.3d at 220 & n.2; Cannady, 283 F.3d at 645 n.3; Attar, 38 F.3d at 731, 732; Braxton, 358 F. Supp. 2d at 503. A defendant who enters a voluntary guilty plea cannot later "raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea." Tollett v. Henderson, 411 U.S. 258, 267 (1973); see also Menna v. New York, 423 U.S. 61, 62 n.2 ("A guilty plea, therefore, simply renders irrelevant those constitutional violations not logically inconsistent with the valid establishment of factual guilt and which do not stand in the way of conviction if factual guilty is validly established.").

The undersigned finds that Petitioner's limited waiver of his right to file a motion pursuant to 28 U.S.C. § 2255 was knowing and intelligent. See Attar, 38 F.3d at 731.

At the Rule 11 plea colloquy, Petitioner testified that he was 43 years old and had completed some college. Plea Tr. at 4 - 5, ECF No. 51. He further testified that he was not on any type of medication or any treatment that would affect his ability to understand the plea hearing. Id. at 5 – 6. The District Judge specifically asked Petitioner if he understood that he was giving up his right to appeal his conviction and sentence and his right to file a collateral

attack, except for claims of ineffective assistance of counsel and prosecutorial misconduct, and Petitioner replied that he understood. Id. at 17 – 18 and 28; see also Blick, 408 F.3d at 169. Petitioner also testified that he had reviewed the plea agreement with counsel before signing it. Id. at 12 - 18.  At the conclusion of the plea colloquy, the District Judge found that Petitioner's plea was made freely and voluntarily, that Petitioner was competent to make a plea of guilty, that Petitioner had full knowledge and understanding of the consequences of his guilty plea, and that there was a basis in fact for the plea.  Id. at 33 - 34.

A defendant's sworn representations made at a plea hearing "carry a strong presumption of verity" and "constitute a formidable barrier against any subsequent collateral proceedings." Blackledge, 431 U.S. at 74.  Therefore, guilty pleas are not normally subject to collateral attack but can be so challenged on the ground that the plea was not knowing or voluntary. Bousley v. United States, 523 U.S. 614, 621-22 (1998). A defendant may attack the voluntary nature of his plea by demonstrating that he received ineffective assistance of counsel. Tollett, 411 U.S. at 267. However, "in the absence of extraordinary circumstances . . . allegations in a § 2255 motion that directly contradict Petitioner's sworn statements made during a properly conducted Rule 11 colloquy are always 'palpably incredible' and 'patently frivolous or false.'" Lemaster, 403 F.3d at 221 (citations omitted).

Here, at his Rule 11 hearing, Petitioner testified as follows regarding his attorney representation:

> THE COURT: . . . Has Mr. Kornbrath adequately represented you in this case?
>
> THE DEFENDANT: Yes.
>
> THE COURT:   Has he left anything undone by way of investigation or possible trial preparation that you think he should have undertaken on your behalf?
>
> THE DEFENDANT: No.

> THE COURT: He filed all the motions that you discussed and that sort of thing; is that correct?
>
> THE DEFENDANT: Yes.
>
> THE COURT: All right. Mr. Kornbrath, were you able to find any defense to the charge?
>
> MR. KORNBRATH: No, Your Honor.

Id. at 33.

Further, the Court inquired as to whether Petitioner understood that he was entering into a limited waiver of his collateral attack rights:

> The Rule 11 colloquy with regard to that issue was as follows:
>
> THE COURT: . . . And finally in paragraph twelve, a very important paragraph in two sections, you and the Government are agreeing to waive your respective - - or your right to appeal at a level 32 or lower and to waive your right to file a habeas petition under the federal habeas statute excepting only claims of ineffective assistance of counsel or prosecutorial misconduct, which you agree there's no evidence of at this time.[5]

Id. at 17 – 18. Subsequently, the Court reiterated:

> THE COURT: And, finally, do you understand that you will also have a limited waiver of your habeas rights to file a petition challenging the constitutionality of your conviction? That's also in paragraph 12(b). Okay? So if your--if Mr. Kornbrath ineffectively represented you or Ms. Morgan [sic] engaged in prosecutorial misconduct, you have that right to challenge your conviction on that grounds but not any other. Is that clear?
>
> THE DEFENDANT: Yes.

Id. at 28.

---

[5] When the AUSA read aloud or summarized each paragraph of the plea agreement in open court at the beginning of the plea hearing, she stated that "[t]he defendant agrees that there is currently no known evidence of ineffective assistance of counsel or prosecutorial misconduct." ECF No. 51 at 11.

### 2) **Petitioner's Claims of Ineffective Assistance of Counsel After the Plea**

Petitioner's remaining Ground Two claim can be considered as counsel's conduct after the plea, but both before and during sentencing. Specifically, Petitioner contends that counsel "conspired with the Government" when he failed to investigate and object to a prior Arizona conviction for which Petitioner was still serving a probationary sentence, and that without that offense, Petitioner would not have had "the necessary two (2) Priors [sic], for Career Offender. [sic] 4B1.1." ECF No. 43 at 6.

The relevant Rule 11 colloquy with regard to the career offender issue was as follows:

THE COURT: . . . Let me go back to paragraph (a) under - - subparagraph (a) under twelve. Given the drug count, or weight, I should say, a level 32 suggests to me that there's something else going on here in the case and did you and Mr. Kornbrath discuss a possible exposure for you to career offender status or some other enhancement that would drive your guideline level up like that?

THE DEFENDANT: Yes.

THE COURT: Okay. Before you signed this plea agreement, were you satisfied that you understood the exposure of the Chapter Seven [sic] enhancement if it were to be for a career offender?

THE DEFENDANT: Yes.

Id. at 17 – 18.

Further, this exchange was had:

THE COURT: . . . Now under a law called The Sentencing Reform Act, guidelines were created and the guidelines and determinate sentencing are what we're talking about for purposes of your sentencing. Have you and Mr. Kornbrath discussed how the guidelines may apply to your case?

THE DEFENDANT: Yes.

THE COURT: Specifically, have you discussed that there may be the application of the career offender provision in the guidelines?

THE DEFENDANT: Yes.

THE COURT: Do you understand in any case, despite whatever the guidelines may indicate, you cannot receive a sentence greater than the twenty year statutory maximum I mentioned earlier?

THE DEFENDANT: Yes.

THE COURT: Do you understand that I won't be able to determine what guidelines apply to your case and what a reasonable [sic] is until after I've received a Presentence Report, which is what Mr. Burlas is going to prepare after this hearing?

THE DEFENDANT: Yes.

THE COURT: Okay. It's a process that usually takes three months to complete and get you ready for sentencing because the PRS, the Presentence Report, has to be prepared, reviewed by both sides; you get an opportunity to file objections; I have to look at it and then it will all come together at the sentencing hearing, but I will not be able to determine what your sentence is until I receive that . . . [PSR], which includes a guideline calculation. Guideline calculation pretty typically is going to be . . . in a drug case, I should say, type of drugs, quantity of drugs and criminal history, what prior convictions, felony convictions or misdemeanor convictions do you have that are countable and then, as we've already alluded to, there are certain enhancements that can be implicated in the - - the guidelines for someone who has two prior drug felony convictions, career offender status. All right? Is that the one that is probably going to affect your case?

THE DEFENDANT: Yes.

THE COURT: Or the one you're concerned about?

THE DEFENDANT: Yes.

THE COURT: Okay. Now do you understand that after I calculate the guidelines and determine what the guidelines say your sentence range should be, I have an obligation to consider certain statutory factors, Section 3553(a) factors, and to make from that determination a reasonable sentence in your case . . . As it may not surprise you now, I have no idea what your sentence is actually going to be as we sit here today. So while I can understand that there are risks that have been raised because of the way the guidelines looks at your prior criminal history, no decision has been made on anything and that has to await your sentencing hearing where you have an opportunity to speak. Is that clear?

THE DEFENDANT: Yes.

THE COURT: Okay. I have the right to vary from the guidelines and impose a lesser or a greater sentence than the guideline calls for . . . Now, at the end of the

> day, if I accept your guilty plea to Count Two today and the sentence you ultimately receive is longer than you hoped it would have been, do you understand that you will still be bound by your guilty plea if you tender it today and you cannot withdraw it?
>
> THE DEFENDANT: Yes.

Id. at 20 - 36.

Finally, petitioner's PSR included the details of all his prior convictions. Neither the Petitioner nor the Government filed any objections to the PSR. At the sentencing hearing, the District Judge advised Petitioner to feel free to answer questions if he did not understand the proceedings, or to consult with counsel at any time. Petitioner testified that he understood. ECF No. 52 at 3 – 4. Petitioner testified that he had had an opportunity to meet with counsel and go over all the information in the PSR. Id. at 4. Subsequently, this exchange was had:

> THE COURT: There is a Chapter Four enhancement, as paragraph 23 [of the PSR] establishes. **You have five prior convictions for felony controlled substance offenses, four of which are accountable for criminal history scoring purposes and the statutory maximum penalty for the instant offense is 20 years, so under guideline 4B1.1, as a career offender, your offense level is increased to a level 32. Do you have any questions about that?**
>
> THE DEFENDANT: No.

ECF No. 52 at 7 (emphasis added).

The Fourth Circuit has noted that a Petitioner's claims of ineffective assistance of counsel at sentencing fall outside the scope of a collateral attack waiver only if Petitioner has been completely deprived of counsel. See Lemaster, 403 F.3d at 220 n.2; Attar, 38 F.3d at 732-33. The instant claim does not suggest that Petitioner was wholly deprived of counsel during his sentencing hearing. Cf. Millon v. United States, Nos. 3:08cv338, 3:05cr341, 2009 WL 3258580, at *4 (W.D.N.C. Oct. 7, 2009) (finding that the waiver provision in Petitioner's plea agreement was "absolute bar" to his claim that his sentence enhancement under U.S.S.G. § 2D1.1 was

improper). To the contrary, it is apparent from the record that Petitioner had an opportunity to discuss his prior convictions with counsel and was well aware of the potential career offender enhancement before it was imposed. Moreover, a review of the record reveals that Petitioner's claim that counsel "conspired with the Government" lacks merit and is insufficiently pled. "Habeas petitions must meet heightened pleading requirements. . . . " See McFarland v. Scott, 512 U.S. 849, 856 (1994). Accordingly, a Petitioner must present evidence that his claims have merit. See Nickerson v. Lee, 971 F.2d 1125, 1136 (4th Cir. 1992), abrogation on other grounds recognized by Yeatts v. Angelone, 166 F.3d 255 (4th Cir. 1999). Here, Petitioner has not provided any factual support for his allegation that counsel conspired with the Government. To the contrary, a review of his PSR and his own testimony at sentencing reveals that Petitioner's predicate convictions justified the enhancement, and Petitioner had no objection to the use of those prior convictions to support the career offender enhancement. Thus, counsel had no grounds to object to the use of the prior Arizona conviction as a predicate offense for the career offender enhancement. As the Government correctly noted, Petitioner was properly sentenced as a career offender,[6] because even without the challenged Arizona conviction, he had the requisite two prior felony convictions for either crimes of violence or controlled substance offenses. Petitioner's PSR reveals that he had an Essex County, New Jersey 2003 felony conviction for distribution of cocaine within 1,000 feet of a school, for which he received a 3-year sentence [ECF No. 30, ¶31 at 7], and another Maricopa County, Arizona felony conviction for possession of marijuana for sale, for which he received a 30-month sentence. Id., ¶33 at 8.

---

[6] Chapter 4B1.1 states that a defendant is a career offender if (1) the defendant was at least eighteen years old at the time the defendant committed the instant offense of conviction; (2) the instant offense of conviction is a felony that is either a crime of violence or a controlled substance offense; and (3) the defendant has at least two prior felony convictions of either a crime of violence or a controlled substance offense.

The undersigned has already determined that Petitioner knowingly and voluntarily entered into the waiver contained in his written plea agreement; accordingly, the undersigned further finds that Petitioner's claims regarding counsel's performance both before and at sentencing fall within the scope of that waiver. Given all this, the undersigned cannot find that counsel was deficient in failing to object to the use of Petitioner's prior felony convictions to classify him as a career offender for purposes of sentencing. See Strickland, 466 U.S. at 687. Accordingly, petitioner's claim is without merit, and he is not entitled to the relief he seeks.

### D. Petitioner's Ground Three Claim That he was Incorrectly Sentenced as a Career Offender

As noted *supra*, Petitioner's Ground Three claim that he was incorrectly sentenced as a career offender is unsupported by the record and falls squarely within his waiver of his collateral attack rights, thus, it should be dismissed.

### E. Petitioner's Motion to Amend

Petitioner seeks to amend his § 2255 motion to add a claim regarding alleged inaccuracies in the calculation of the applicable sentencing guideline range in his PSR, purportedly "found by the Probation Officer," relying on Molina-Martinez v. United States, 136 S. Ct. 1338 (2016). ECF No. 60 at 1 – 2. Nowhere in the motion does Petitioner identify what the alleged inaccuracies in the calculation of the applicable guideline ranger were, thus his motion is insufficiently pled. Nonetheless, he contends that his amendment "relates back." Id. at 2.

As an initial point, the Court finds that Petitioner's claim is barred by the one-year statute of limitation set forth in the Antiterrorism and Effective Death Penalty Act (AEDPA). Petitioner filed his motion to vacate on September 18, 2015. The certificate of service for his motion to amend was undated, but the motion was postmarked on April 26, 2016 and filed on April 29,

2016, after the Government had already filed its responsive pleading. However, April 26, 2016 was over one year after his conviction became final. Therefore, the amended petition was not filed within the one year limitation period. Further, as a general rule, while motions to amend pleadings are liberally granted under Federal Rule of Civil Procedure 15(a), leave to amend may be denied when the proposed amendment is "clearly insufficient or frivolous on its face." Johnson v. Oroweat Foods Co., 785 F.2d 503, 510 (4th Cir. 1986). Further, here, because Petitioner's fourth claim does *not* "relate back" to the original motion, it falls outside of the one-year statute of limitations and is also time-barred. Pursuant to Rule 15(c), untimely claims raised in an amendment "relate back" to the date of the original pleading if "the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth . . . in the original pleading." Fed.R.Civ.P. 15(c)(2). The Supreme Court held that "relation back" is proper only where "the original and amended petitions state claims that are tied to a common core of operative facts." Mayle v. Felix, 545 U.S. 644, 664 (2005). Petitioner's original motion to vacate involved facts relating to the validity of his career offender sentence enhancement and the effectiveness of counsel. His fourth claim involves facts relating to alleged inaccuracies "found by the Probation Officer" in calculating the applicable guideline sentencing range. This claim is not "tied to a common core of operative facts" and thus "relation back" is not proper. Because this additional claim would be dismissed anyway, the proposed amendment is futile and motion to amend [ECF No. 60] must be **DENIED**.

### IV. Recommendation

For the reasons stated above, the undersigned recommends that the petitioner's §2255 motion [ECF No. 43] be **DENIED** and **DISMISSED** with prejudice from the docket.

**Within fourteen (14) days** after being served with a copy of this report and recommendation, any party may file with the Clerk of Court written objections identifying those portions of the report and recommendation to which objection is made and the basis for such objections. A copy of any objections shall also be submitted to the United States District Judge. **Failure to timely file objections to this report and recommendation will result in waiver of the right to appeal from a judgment of this Court based upon such report and recommendation**. 28 U.S.C. §636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985): United States v. Schronce, 727 F.2d 91 (4th Cir. 1984), cert. denied, 467 U.S.1208 (1984).

The Clerk is directed to mail a copy of this Report and Recommendation to the *pro se* petitioner by certified mail, return receipt requested, to his last known address on the docket sheet, and to transmit a copy electronically to all counsel of record.

DATED: August 24, 2016

                                              James E. Seibert
                                              JAMES E. SEIBERT
                                              UNITED STATES MAGISTRATE JUDGE